## A. A. Nelson v. Davis King.

The depositary of a chattel who assumes to keep it without reward, is liable to the bailor for the value thereof, in case he fails to redeliver it; and the bailor may treat such failure or refusal of the bailee as a conversion of the thing, and sue for and recover its value.

The liability of the bailee in such case will not be affected by the fact that the bailor was a joint owner of the chattel with others, and that the bailee had delivered the same before demand made by the bailor, to one claiming to own the same jointly with the bailee. He cannot excuse himself for a failure or refusal to redeliver, without showing beyond dispute that he had delivered the property to the true owner.

Where it appeared from the transfers endorsed on landscrip deposited with a bailee to keep without reward, that the bailor was one of the joint owners thereof, the bailee is not permitted by the law to infer from the endorsements aforesaid, that the deposit with him was made for the benefit of all parties in interest, subject to the demand of any one or all of the parties interested.

Land Scrip, unlike an ordinary title deed, is treated as a chattel, and has a market value like other chattels, and the bailor is entitled, on the bailee's failure or refusal to re-deliver, to recover the value of the land scrip, and is not required to pursue the property in the hands of a third person, or to institute suit to establish his right to the scrip, or a portion of it, as against a holder of it who has derived his possession or claim through a delivery to him by the bailee, or as against third persons generally.

Appeal from Nacogdoches. Tried below before the Hon. A. W. O. Hicks.

The petition of the plaintiff, Davis King, administrator of the estate of James P. Haynes, deceased, alleged that on the sixth day of June, 1841, the defendant, Albert A. Nelson, then being the county surveyor of Nacogdoches county, as such county surveyor did receive at his office from said Haynes, in his lifetime, two certain pieces of land scrip, numbered 211 and 218 respectively, for 640 acres of land each ; he, the said Nelson, then and there receiving the same in his then official capacity of county surveyor, and which said Haynes then filed in said office on certain lands lying within the jurisdiction of said office for the purpose of filing. That the said scrip was worth one thousand dollars. Plaintiff alleged that on the ——— day of July, 1854, when said Nelson was the district surveyor for Nacogdoches county, he, as administrator aforesaid, demanded of said Nelson said scrip, and the papers pertaining thereto ; that said scrip ought then to have been in his said office ; that the defendant failed to deliver to him said scrip.

Plaintiff further alleged that since the said file and delivery aforesaid, said defendant, without the knowledge or consent of said Haynes, or of petitioner, delivered said scrip to one Mrs. King, who refuses to deliver the same to him. Plaintiff alleged further, that Haynes, at the time of filing of said scrip, possessed the same and was the legal and equitable owner of one half of the same, which is still held and owned by the estate of said Haynes.

The defendant demurred to the petition ; the demurrer was overruled ; he filed also a general denial, and a special answer alleging a want of ownership by Haynes in his lifetime in said scrip, by reason of the same having been placed in his hands for the purpose of having the same located, under a contract which he failed to comply with, by which he was to have a portion thereof for his services ; alleging that the sole and entire property in said scrip is in the heirs of Wm. P. King, and of Frances A. Johnson, deceased, his wife, and that the same are in the possession of William Johnson, the surviving husband and administrator

of said Frances.   He further alleged, that he had delivered up
said scrip upon the order of the Probate Court of San Augustine
county, to said Frances A. Johnson.   To which answer the plain-
tiff demurred, and the demurrer was overruled.   The defendant
pleaded the statute of limitations, of four and of two years.

The plaintiff offered and read in evidence the following receipt :

"Nacogdoches, June 6, 1845.

"Mr. Jas. P. Haynes has this day filed with me in my office
two pieces of land scrip, each severally numbered 211 and 218,
for 640 acres of land each, and were issued to Thos. Toby, of the
city of New Orleans, on the 20th December, A. D. 1836, by
Sam. Houston, President of the Republic of Texas."

"A. A. Nelson, Co. S. N. C."

The plaintiff also proved the demand made by him as adminis-
trator of Haynes, of defendant on the —— day of July, 1854, to
deliver to him the land scrip described in the above receipt.   The
petition was filed on the 11th of October, 1854.

The defendant, in answer to interrogatories propounded by the
plaintiff to him, stated that there were several assignments or
transfers endorsed on the scrip in question; that there was a regu-
lar chain of assignments from the original grantee of said scrip
certificates, endorsed on the same in due form of law, to Wm. P.
King, of the entire interest thereto; also, an assignment written
on a slip of paper, and attached to each piece of scrip, from King
to J. P. Haynes and W. Y. Lacey, for an interest of two-thirds
in the same, dated April 6, 184—; and also in like manner there
were attached certain other slips of paper, upon which were writ-
ten assignments from W. Y. Lacey to J. P. Haynes, of two-thirds
of his, Lacey's, interest in the same scrip, dated November 12,
1845.   Which facts, defendant further answered, he had stated to
the plaintiff before the institution of this suit.

The defendant proved by Wm. Johnson that he, witness, then
had the two pieces of land scrip described by plaintiff's petition,
and held them for the estate of Frances A. Johnson, deceased, for-
merly Frances King.   That they had been transferred to James
R. Creecy, from him to King & Nelson, from them to Darnell,
and lastly from Darnell to William P. King.

42Y

The opinion contains a sufficient synopsis of all the other facts and matters which need be stated.

The appellant assigned as error, that the court overruled his demurrer to the petition; that the charge of the court was contrary to the law of the case; that the verdict of the jury was contrary to the law and evidence; that the court overruled his motion for a new trial; and that the judgment was rendered for plaintiff, whereas, upon the facts and law, it should have been for himself.

*Geo. F. Moore*, for the appellant.—This was a suit by appellee to recover the value of one half of two land certificates, or Toby scrip, which was deposited by appellee's intestate some twelve or fifteen years before the suit. The facts show the deposit of the certificates and the demand of them by appellant just before the bringing of the suit, and that appellee informed him at the time of the demand, of the disposition that he had made of them. The testimony also showed that said scrip had been regularly transferred by endorsements thereon to William P. King, and that there were transfers from him for about one half of the same from said King to appellee's intestate, attached to the same by wafer, and that appellant had seven years before delivered said scrip to Mrs. King, the widow of said William P. King, upon her demand, and that the testimony also showed that said scrip is now in the possession of William Johnson, who holds the same as surviving husband of said Mrs. King, now deceased. The scrip was not filed on any land, or delivered to him to file; nor is it charged or pretended that appellee's title papers have been lost or destroyed, or in fact that he or his intestate has suffered any injury beyond the denial of his legal right to the return of the scrip to him, as the representative of the bailor of said scrip. The petitioner admits that appellee knew that the scrip had been delivered to Mrs. King, surviving wife of said William P. King, and this was shown by the testimony. The scrip was not filed upon any land, but seems to have been merely left in appellant's hands that it might remain in the surveyor's office for the benefit of the owners, so that they might at any future time appropriate it to any land subject to entry without risking

the transmission of the certificates. To hold the scrip under these circumstances was not one of appellant's official duties, and neither by any law or the contract between the parties, was he to receive any compensation for doing so. Appellant was consequently but a mere depositary, and liable only for fraud or gross negligence. (Story Bail., sec. 97; Eidson v. Weston, 8 Conn. Rep., 278.)

It cannot be pretended that there was any fraud on the part of appellant, and is it not equally clear that he did not act with gross negligence, if indeed he did not act in accordance with his duty to the bailor of the scrip in delivering it to the sole heir of the owner of one half of it, to leave out of view entirely that he did so in obedience to an order of the County Court of San Augustine county, passed in the course of administration upon the estate of said King, which was ruled out for the want of the impress of the seal. If there was any controversy between the owners of the scrip as to who should hold possession of it at the time of the deposit, it was not made known to him, though in fact there seems to have been some after the death of the original co-proprietors; and as the papers deposited with him showed that King, the original owner, had still a large interest in the scrip, might not appellant reasonably conclude that it was deposited with him for the mutual benefit of all parties in interest, and that he should hold the same subject to the control of any one or of all the parties interested in it.

If appellant were, however, guilty of gross negligence, what was the measure of the damages to which appellee was entitled? Unquestionably, to the extent of the loss or injury sustained by him. (Story's Bail., 97.) But was this, as charged by the court, the entire value of intestate's interest in the scrip? Certainly not; as it is not pretended that his title was destroyed, or that he could not secure his interest in the scrip by a demand of the same of the party in possession, or certainly by legal proceedings for this purpose. And, in fact, there was no evidence as to any damages which had or could accrue to intestate by reason of the failure of appellant to deliver the scrip to appellee.

If the above view of the law of this case is correct, the charge

of the court was clearly erroneous, and the judgment should have been for the appellant instead of the appellee.

*R. S. Walker,* for the appellee.—The liability of the bailee to perform his duty as such under a bailment, consists in the tort. His failure to perform the trust with proper care, is a tort. (Edwards on Bailments, 110.)

From the deposit of the scrip an implied promise arose to re-deliver to the bailor on demand. There was no privity of contract between the appellant and the party to whom he actually delivered. The appellant acquired the right of possession, and if there was a duty to re-deliver to the bailor, it would be a conversion to deliver to any one else. The possession of the bailee is that of the bailor. An infraction of that right by the bailee might result in a loss to the bailor, against which he might have protected himself, even against a joint owner, by retaining the possession of the property. Such bailor might have had charges against the property arising from the joint ownership, upon which the law might establish in his favor and for his protection an exclusive right of possession, of all which the bailee is supposed to be wholly ignorant. The action of trover lies against a bailee who, having property in his possession under a stipulation to deliver it at a particular place on a demand made, refuses to deliver it at all. By denying the right of the bailor, he makes himself answerable for the property in the proper action. This holds true wherever property is in the hands of a mandatory or general bailee, on a trust connected with its custody or disposition. It must be disposed of, surrendered or delivered in the manner, and at the time and place contemplated in the contract. (Edw. on Bail., 117; see also pp. 85, 86.) The contract in this case in legal effect was to deliver the scrip on the demand of the bailor.

The rule is that the depositary is bound to re-deliver or restore the chattels bailed to the bailor. (Edw. Bail., 83.)

He is not bound to prove his right to the goods. The bailee cannot deny it. A delivery to the real owner, however, is a good defence as against a bailor who is not entitled. A refusal to deliver is conversion. (Edw. Bail., 88.)

If the thing delivered or deposited be indivisible, those entitled (other than the bailor,) must agree among themselves. (Edw. Bail., 86.)

Then the appellant was liable for all damages resulting from failure to deliver to him. All risk arising from the breach of duty by the bailee is cast upon him. (Edw. Bail., 88.)

For which reasons it is submitted that the judgment should be affirmed.

BELL, J.—This suit was instituted by the appellee, as administrator of the estate of one James P. Haynes, to recover from the appellant the value of two pieces of land scrip, which were deposited with the appellant by James P. Haynes in his lifetime. The testimony shows that the land scrip was placed in the hands of Wilson, the appellant, for safe keeping merely. The transfers on the land scrip showed that it was owned by James P. Haynes, and one William P. King, and one W. Y. Lacy. It appears that before the institution of this suit William P. King died, and that after his death, but also before the institution of this suit, the surviving wife of William P. King demanded the land scrip from Wilson, who delivered it to her. Mrs. King afterwards married one Johnson, and died. Johnson was a witness on the trial of this cause, and testified that he had possession of the land scrip, and that he held it as the property of the estate of his deceased wife, formerly Mrs. King. There was proof of a demand made by the appellee from the appellant, for the redelivery of the scrip before the institution of the suit. The judge charged the jury as follows: "If you are satisfied from the testimony that the plaintiff's intestate, Mr. Haynes, delivered the scrip described in the petition to defendant, that plaintiff's intestate owned a part of said scrip, and that defendant failed or refused to deliver the same to the said Haynes or to plaintiff as his administrator upon a demand for the same, you will find for plaintiff the value of his interest in said scrip. If you do not find all the above facts; find for defendant." The jury found for the plaintiff the sum of two hundred and eighty-five dollars. The defendant moved for a new trial, and the court required the plaintiff to remit the sum of one hund-

red and nine dollars of the verdict, which the plaintiff did, reducing the amount recovered to one hundred and seventy-five dollars.

We are of opinion that there is no error in the judgment of which the appellant can complain. Upon the delivery of the land scrip by Haynes to Nelson, Nelson became the bailee of the scrip. His responsibility was that of a depositary, who assumes to keep the property delivered to him, without reward, and to redeliver the same to the bailor according to the contract. The general rule undoubtedly is, that the depositary is bound to redeliver or restore the chattels bailed to the bailor. But the law is not so clearly and accurately settled as could be desired, as to what are the duties and rights of bailees in cases where the chattels bailed are claimed by some third person who asserts a title superior to that of the bailor. The case more analogous to the present than any other which we have been able to find, is that of May and another v. Harvey, reported in the 7th volume of the new edition of East's Reports, 109. The case was originally reported in 13 East., 199. In that case Taylor, who afterwards became a bankrupt, was indebted to one Harvey. Taylor executed an assignment of a lease to Harvey, and the lease was deposited with Harvey's son. The assignees of Taylor demanded the lease from Harvey. It was shown that the son was acting as the agent and under the direction of the father. The lease had been originally assigned to Taylor by one Bridge, and Taylor, who was examined as a witness at the trial, said that to save the expense of a counterpart of the lease, it had been agreed between Bridge and himself, that the lease should remain for both of them in the hands of the defendant's son: but it did not appear that this agreement was communicated to the son at the time the lease was deposited with him. When the assignees of Taylor demanded the lease from Harvey he made no objection that it had been deposited by Taylor and Bridge jointly, but claimed the right to hold the lease as a security for his debt against Taylor, by virtue of Taylor's assignment of it to him; which assignment appeared to have been antedated. There was verdict for the assignees. There was a motion to set aside the verdict and enter a nonsuit, on the ground that the lease had been

Nelson v. King.

deposited with the defendant's son for the joint benefit of Bridge and Taylor, and that one of them could not recover it without the consent of the other. On the hearing of the case in the King's Bench, on the report of the Lord Chief Baron, Lord Ellenborough said : "It was clear that if the lease had been deposited by Bridge and Taylor, and the bailee had agreed to keep it for the two, it was not in the power of one of them, or of the assignees who represented that one, to take it out of his hands without the consent of the other. But here there was no evidence that it was deposited by the two, or that Bridge had any notice that it was so deposited by Taylor on their joint account. It is true, the bankrupt in his evidence said, it had been agreed by Bridge and him that the lease should remain in the hands of the defendant's son ; but it did not appear that the bailee had any notice of this, or had accepted it upon any such trust." The motion to set aside the verdict in favor of the assignees was overruled.

We think it quite clear that upon the delivery of the scrip in this case by Haynes to Nelson, Nelson became bound to redeliver the scrip upon demand to his bailor, and that he could not excuse himself for a failure or refusal so to redeliver, without showing beyond dispute that he had delivered the scrip to the true owner ; and this he has failed to do, because it is not shown that Mrs. King to whom the scrip was delivered by Nelson was the true owner. It is argued in behalf of the appellant that inasmuch as the transfers on the scrip showed that William P. King was a part owner of it, he might reasonably conclude that it was deposited with him for the benefit of all parties in interest, and that he should hold the scrip subject to the demand of any one or all of the parties interested. The law will not permit the bailee to indulge in such implications. If the scrip has been placed in his hands by all the part owners of it, without any special agreement as to whom it should be delivered by the bailee, the rule of law is well settled that the bailee could only acquit himself of responsibility by redelivering the scrip on the joint demand of all the persons making the deposit. Edwards on Bailments, 85.

It is contended, however, that although the appellant may be liable for a breach of his contract, his bailor is only entitled to

recover nominal damages, and not the value of the land scrip, because the title of the appellee's intestate is not affected by the failure of the bailee to redeliver the scrip, or by the delivery of it to a third person. The scrip is treated in law as a chattel, and, unlike an ordinary title deed, it has a market value, like other chattels. We are of opinion that the bailor is not required to pursue the property in the hands of a third person, or to institute suit to establish his right to the scrip or to a portion of it, as against the present holder of it. The bailor had a right to treat the failure or refusal of the bailee to redeliver the scrip as a conversion of it, and to sue for its value. Edwards on Bailments, 87.

The verdict of the jury was excessive, but it was reduced by the remittitur to a sum less than the plaintiff below might properly have recovered, upon the evidence. We are of opinion, therefore, that the judgment of the court below be affirmed, and that the appellee recover of the appellant &c., the amount of the judgment rendered in the court below, less the amount remitted.

Judgment affirmed.