PORT ARTHUR TOWNSITE CO. v. JOHNSON.

(Court of Civil Appeals of Texas. Galveston. June 20, 1912.)

TROVER AND CONVERSION (§ 1*)—ELEMENTS—MISTAKE—CHATTEL MORTGAGES.

Plaintiff, having recovered judgment on a claim transferred to him by defendant, and having foreclosed a chattel mortgage securing the debt, is not entitled to hold defendant as for conversion, because defendant, by mistake, receipted the claim and delivered the evidence thereof to the debtor, instead of to plaintiff.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

Error to Jefferson County Court; R. W. Wilson, Judge.

Action by C. X. Johnson against the Port Arthur Townsite Company and others. Judgment for plaintiff, and defendant company appeals. Reversed and rendered.

Greers & Nall and T. H. Bowers, all of Beaumont, for plaintiff in error. J. V. Flem-

ing and Chas. D. Smith, both of Beaumont, for defendant in error.

REESE, J. This suit was instituted in the county court by C. X. Johnson against E. A. Fields and wife and the Port Arthur Townsite Company to recover an indebtedness of $375, and to foreclose a mortgage lien. Upon trial, without a jury, judgment was rendered in favor of plaintiff against E. A. Fields and the Townsite Company for $275, with foreclosure of mortgage, as prayed for, upon certain personal property, against all defendants. From this judgment, only the Port Arthur Townsite Company appeals.

Plaintiff sued to recover an indebtedness of $375 originally from Fields to the Townsite Company. It was alleged that plaintiff held a mortgage on certain personal property, including 199 sacks of rice, to secure an indebtedness of Fields to him for rent, and also a mortgage on certain live stock, which was junior to a mortgage held by the Townsite Company; that Fields had delivered the 199 sacks of rice to the Townsite Company, which it then held in its warehouse. It seems that 100 sacks of this rice was delivered in settlement of a mortgage given by Fields to the Townsite Company for supplies for the current year, and 99 sacks in payment of an old debt which Fields owed the Townsite Company. It was alleged that plaintiff had purchased of the Townsite Company, for $275 in cash, the indebtedness of Fields to it, which was alleged to include the old indebtedness of $100 and the $275 secured by the mortgages aforesaid; that the cash was paid, but that the Townsite Company, in violation of its obligation to plaintiff and of his rights, instead of transferring said indebtedness and mortgage of Fields to plaintiff, receipted and released the same and turned the papers over to Fields. It was further alleged in the petition that this action on the part of the Townsite Company was by mistake, and that, notwithstanding, plaintiff was entitled to judgment against Fields for the indebtedness sued for and foreclosure of the mortgage, and also against the Townsite Company. Before the suit was instituted, the Townsite Company had delivered to plaintiff the 199 sacks of rice, which had been sold by him for $2.25 per sack and the proceeds applied to the indebtedness of Fields to Johnson, amounting to about $1,160. This suit was to recover the amount of Fields' indebtedness to the Townsite Company, alleged to be, as aforesaid, $375; recovery being sought against both Fields and the Townsite Company.

The trial court filed the following conclusions of fact, which are adopted, no objection being made by either party to any of the findings:

---

"(1) I find that E. A. Fields lived on a place owned by C. X. Johnson during the year 1909; that, prior to the time Fields moved on the Johnson place, he became indebted to the Port Arthur Townsite Company in the sum of one hundred thirty ($130.00) dollars, evidenced by note, and to secure which he executed a mortgage on one mare, four years old, one horse, six years old, one surrey and harness, three Jersey cows, three heifers, and three hogs. This note, which was secured, as well as the mortgage, was dated January 21, 1908, and was a valid, subsisting mortgage upon the property described therein.

"(2) I find that on January 11, 1909, E. A. Fields and wife executed to C. X. Johnson a mortgage upon the property described in paragraph 1, and this was a second mortgage upon said property.

"(3) I find that on October 4, 1909, E. A. Fields and wife executed to the Port Arthur Townsite Company a mortgage on 100 sacks of rice raised on the Johnson place, which was given as additional security to secure the indebtedness which Fields owed the Port Arthur Townsite Company at that date.

"(4) I find that on October 4, 1909, E. A. Fields delivered to the Port Arthur Townsite Company 100 sacks of rice raised by him on the Johnson place, which rice was removed by the Port Arthur Townsite Company from the Johnson land and placed in its warehouse on its own property. At the same time Fields also delivered to the Port Arthur Townsite Company 99 sacks of rice, to be used by that company to pay an old debt which Fields owed the Port Arthur Townsite Company, and which was also removed by it to its warehouse at the same time the 100 sacks were removed. Johnson did not consent for this rice to be removed from his land by either Fields or the Port Arthur Townsite Company.

"(5) I find that Johnson and Mr. Van Tyen, the latter being the manager of the Port Arthur Townsite Company, had a number of conversations regarding the Fields indebtedness; Van Tyen telling Johnson that if he would pay off the Townsite Company's loan that he would deliver him the rice, and that his mortgage would be first on the property described in paragraph 1 of these findings of fact, which property was then on the Johnson place. The indebtedness, other than the old indebtedness secured by mortgage on the Howe Bros.' rice, then amounting to two hundred seventy-five ($275) dollars. Johnson understood that he was buying the indebtedness, and that it was to be transferred to him, so that he could foreclose the mortgage on the property and thereby get possession of it; and I therefore find as a fact that the indebtedness was to be transferred by the Port Arthur Townsite Company to Johnson.

"(6) I find that Johnson claimed a land-lord's lien on the 199 sacks of rice which had been removed by Fields and the Port Arthur Townsite Company, and placed in the warehouse of the Port Arthur Townsite Company about the 1st of October, 1909, and that, by virtue of the length of time in which the same had been removed from the land, the Port Arthur Townsite Company was claiming that Johnson had waived his landlord's lien.

"(7) I find that, in order to settle the controversy, Johnson paid to the Port Arthur Townsite Company two hundred seventy-five ($275) dollars, in consideration of which the Port Arthur Townsite Company turned over to Johnson all rice which it then had in its warehouse, amounting to 199 sacks, which Johnson received and sold for two dollars and twenty-five cents ($2.25) per sack; that the Port Arthur Townsite Company released its lien on the live stock and personal property described in paragraph 1 of this finding of fact, and marked the Fields notes paid, and sent them to Fields, except the note secured by the lien on rice raised on the Howe Bros.' tract, which the Port Arthur Townsite Company kept. I find that Johnson was not to get this last note mentioned, and the same was properly retained by the Townsite Company.

"(8) I find that, when the Townsite Company released its lien, thereupon the Johnson mortgage and landlord's lien became the first liens on the rice and personal property described in paragraph 1 of this finding of fact, and that Johnson foreclosed on the rice by taking it into his possession and selling it; and I find that he is entitled to foreclosure on the other property described in paragraph 1 of this finding.

"(9) I find that the Port Arthur Townsite Company should have delivered the notes to Johnson which were canceled and sent to Fields, and, as above stated, the face value of these notes and indebtedness was two hundred seventy-five ($275) dollars; but I find as a fact that, notwithstanding this, Johnson still is entitled to foreclosure of his lien, which became the first lien when the other notes were paid."

Upon these conclusions, the court rendered judgment against both Fields and the Townsite Company for the debt and foreclosure. By various assignments of error, appellants complain of the judgment against it. These assignments must be sustained.

Appellee's claim, in which he was sustained by the judgment, briefly stated, is that, notwithstanding he recovered judgment against Fields on the Fields indebtedness to the Townsite Company and foreclosure of the mortgage given by Fields to secure the same, nevertheless he was also entitled to recover of the Townsite Company for the amount of said indebtedness, upon the sole ground that it had, in violation of its obligation to transfer this indebtedness to him,

receipted the same as paid and turned over the papers to Fields. Appellee seeks and obtains judgment against Fields for this indebtedness and foreclosure to the same extent in every particular that he would be entitled to if the indebtedness had been transferred to him, as he claims the Townsite Company should have done. The court finds that only the $275 was to be so transferred, according to appellee's understanding; the old indebtedness of Fields to the Townsite Company of $100 not being included in the agreement. The only ground upon which appellee seeks to sustain the judgment against appellant is that it was bailee of the indebtedness (or the paper evidence thereof) from Fields to it, and that appellee had a right to treat the delivery of the papers, receipted, to Fields, in violation to the contract of bailment, as a conversion of the property, which rendered it liable for its value, relying upon Nelson v. King, 25 Tex. 662. The case has no application. The appellee alleges that the delivery of the papers, mortgages, etc., by appellant to Fields was by mistake. The court so treats it, and adjusts the rights of appellee against Fields as if no such delivery had occurred, and as if the indebtedness had been transferred to appellee, as was understood by him should be done, by rendering judgment and foreclosure against him for this very debt. Upon no principle of law, equity, or justice would appellee be entitled, also, to recover of the appellant the amount of the same debt upon any possible theory of a conversion by appellant of the paper evidence of the debt, as bailee thereof. The rice was all turned over to appellee and sold, and the proceeds appropriated by him; and that matter is not affected by the judgment, which deals solely with the indebtedness of Fields to appellant of $275. Upon the undisputed evidence, taking the view most favorable to appellee, he is not entitled to recover anything of appellant, the Port Arthur Townsite Company.

The judgment is therefore reversed and judgment here rendered that appellee take nothing as against appellant.

Reversed and rendered.