JAMES M. MAHANEY, Plaintiff, *v.* JOHN D. WALSH, Defendant.

*Conversion — transfer of stock previously conveyed to another — non-delivery of the stock — an executor may transfer stock of the estate, by his individual signature — he thus transfers a cause of action for its conversion.*

Where the holder of a certificate for 216 shares of corporate stock, by an instrument in writing, transfers 75 shares thereof, and thereafter, before the 75 shares thus transferred are entered upon the books of the corporation in the name of the transferee, transfers all of the 216 shares to another party, he, by such last-mentioned transfer, wrongfully exercises an active dominion over the 75 shares which constitutes a conversion thereof.

In such case, a delivery of the stock would not be necessary.

The legal title to stock held by an executor will be transferred by a written assignment thereof, signed by him simply with his individual name, and such assignment carries with it a right of action for the conversion of the stock.

MOTION by the plaintiff, James M. Mahaney, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, upon the verdict of a jury rendered by direction of the court after a trial at a Trial Term of the Supreme Court held in and for the county of Niagara.

Action to recover the value of seventy-five shares of the capital stock of the American District Steam Company, of the value of $100 per share. Commenced in Niagara county March 11, 1895. This company was a corporation transacting business at Lockport,

FOURTH DEPARTMENT, APRIL TERM, 1897. [Vol. 16.

N. Y. On the 3d day of March, 1883, there was issued to the defendant by this corporation two hundred and sixteen shares of its capital stock in one certificate, No. 274, in which it was stated that the same was transferable only on the books of the company, in person or by attorney, on surrender of the certificate duly assigned. On the 14th day of April, 1883, the defendant and his wife, by an instrument under seal, duly acknowledged, in consideration of the sum of one dollar, did sell, grant and convey to Mary Mahaney and her heirs and assigns seventy-five shares of the capital stock of the said corporation, said seventy-five shares being a part of the said two hundred and sixteen shares issued to the defendant as aforesaid. There was evidence tending to prove the delivery of this instrument to Mary Mahaney, but the entire evidence leaves that question in considerable doubt.

Mary Mahaney died October 22, 1889, leaving a last will and testament, in which she appointed John C. Mahaney, her son, executor. On the 11th day of November, 1889, her will was admitted to probate by the surrogate of Niagara county, and letters testamentary were issued to the executor, and on the same day the defendant executed and delivered to J. H. Babcock an instrument written upon the back of the certificate, for the 216 shares, which is as follows:

"For value received, I hereby sell, assign and transfer unto I. H. Babcock the within two hundred and sixteen shares of stock of the American District Steam Company, represented in the within certificate, and do irrevocably constitute and appoint
attorney to transfer the same on the books of the company, with full power of substitution.

"Witness my hand this          day of        .    .

"J. D. WALSH."

Mr. Babcock was, at that time, the treasurer of the corporation.

On the 29th of January, 1890, Babcock, by an instrument in writing, transferred the 216 shares for the consideration of one dollar to Mary F. Walsh, the defendant's wife. On the 4th of June, 1894, the executor, John C. Mahaney, made, executed and delivered to the plaintiff herein an instrument in writing, as follows:

"For a good and valuable consideration, to me in hand paid, the receipt whereof is hereby acknowledged, I do hereby sell, assign,

transfer and set over unto James M. Mahaney, of the City of Lockport, N. Y., all my right, title and interest in and to seventy-five shares of the capital stock of the American District Steam Company, said seventy-five being part of the two hundred and sixteen shares held in the name and certificate of John D. Walsh, No. 274, to have and to hold the same unto said James M. Mahaney, his heirs and assigns forever.

" Witness my hand and seal this 4th day of June, 1894.

           " JOHN C. MAHANEY.   [L. S.] "

The seventy-five shares were never transferred upon the books of the corporation from the defendant to Mary Mahaney, nor was any notice of the transfer to her given to it.

The certificate, No. 274, seems to have been cut from the stock book of the corporation, and afterwards returned and pasted back in its place. There was evidence tending to show the value of the stock, and that dividends had been paid upon it by the corporation. Upon the close of the plaintiff's proof the defendant moved for a nonsuit upon the ground that Mary Mahaney obtained no title to the said seventy-five shares of stock under the transfer to her, and that there was no delivery of the same to her, and that the only way that she could obtain title to the same was by a certificate transferring title to her entered upon the books of the corporation, or a refusal to make such entries, and that there had been no conversion proved, by the defendant, of the seventy-five shares of stock. This motion was denied, but afterwards the defendant asked for the direction of a verdict upon the same grounds. The plaintiff asked to go to the jury upon all of the questions of fact in the case, which request was denied by the court and the plaintiff excepted. The court directed a verdict for the defendant and ordered the exceptions to be heard in the first instance by the Appellate Division of this court.

*Henry M. Davis,* for the plaintiff.

*Richard Crowley,* for the defendant.

WARD, J. :

The transfer of the seventy-five shares of stock from the defendant to Mary Mahaney, the testatrix, conferred upon her the legal

title to those shares and no transfer of the stock upon the books of
the corporation was necessary as between the defendant and her.
But as between Mary Mahaney and the corporation, in order to
entitle her to receive dividends and enjoy the benefits of her stock,
the proper transfer should have been made upon the books of the
corporation. Until that was done the defendant was the nominal
owner of the stock and treated as the trustee of the stock for Mary
Mahaney. (*Johnson* v. *Underhill*, 52 N. Y. 203; *Bank of Utica*
v. *Smalley*, 2 Cow. 770; *Leitch* v. *Wells*, 48 N. Y. 585.)

A delivery of the stock to Mary Mahaney was not necessary to
perfect her title to it. (*Mitchell* v. *West*, 55 N. Y. 107; *Caywood*
v. *Van Ness*, 74 Hun, 28; affd., 145 N. Y. 600; *Schoonmaker* v.
*Vervalen*, 9 Hun, 138; *Beardsley* v. *Beardsley*, 138 U. S. 262.)

But if delivery were necessary the plaintiff furnished proof that
should have been submitted to the jury upon that subject.

Two questions remain to be considered:

*First*, was there a conversion by the defendant of the seventy-
five shares of stock ?

*Second*, did the executor, in executing the assignment of the cause
of action to the plaintiff in his individual name, transfer the seventy-
five shares, and the claim for their conversion, to the plaintiff ?

Conversion has been defined as follows: " Conversion consists
as a tort either in the appropriation of the personal property of
another to the party's own use and benefit, * * * or in exercising
dominion over it in exclusion and defiance of the rights of the owner
or lawful possessor * * * under a claim and title inconsistent with
the owner's. The action of trover is founded on the right of prop-
erty and possession, and any act of a party, other than the owner,
which militates against this conjoint right in law, is a conversion.
It is not necessary for a manual taking to make conversion, nor that
the party has applied it to his own use. The question is, does he
exercise dominion over it in exclusion or in defiance of the owner's
right. If he does, that is conversion." (4 Am. & Eng. Ency. of
Law, 108.)

This definition seems to be sustained by authorities. (*Boyce* v.
*Brockway*, 31 N. Y. 490; *Caywood* v. *Van Ness*, *supra*.)

In the *Caywood* case the defendant, after assigning a bond and
mortgage, obtained possession of them and assigned them to another

person before the first assignment was recorded, and it was held that he was guilty of conversion.

Canceling a certificate of membership in a board of trade is a conversion of such certificate. (*Olds* v. *Chicago Open Board of Trade*, 33 Ill. App. 445.)

The courts in several of the States have held that a sale of the chattel-mortgaged property by the mortgagor in possession, in denial of the mortgagee's rights, was a conversion. (*White* v. *Phelps*, 12 N. H. 382; *Millar* v. *Allen*, 10 R. I. 49; *Ashmead* v. *Kellogg*, 23 Conn. 70; *Coles* v. *Clark*, 3 Cush. [Mass.] 399. And see *Anderson* v. *Nicholas*, 28 N. Y. 600.)

A curious case arose in Connecticut in an action of trover where it appeared that in August plaintiff bought of defendant a large amount of ice in the latter's ice house; that there was no agreement as to when the ice should be removed; that in December, part of the ice still remaining, defendant wrote that it was about time to cut another crop, and asked when plaintiff could give up the ice house; the plaintiff told the defendant that he could place the new ice above the plaintiff's ice; that defendant covered plaintiff's ice with several feet of new ice; that a dispute arose, and plaintiff made a formal demand for its ice, which was still covered; that defendant claimed title and refused to deliver or agree to deliver. Held, a conversion by defendant. (*Hartford Ice Co.* v. *Greenwoods Co.*, 23 Atl. Rep. [Conn.] 91.)

Observe that the only conversion in this case was the assumption of ownership of the ice by the defendant.

"Anything which is the subject of property and is of a personal nature is the subject of conversion, even though it have no value except to the owner." (Cooley on Torts, 447.)

Not only tangible property, but all property of a personal nature which can be converted. Trover lies for paper representative of value, choses in action *and corporate stock*. (*McAllister* v. *Kuhn*, 96 U. S. 87; *Ayres* v. *French*, 41 Conn. 151; *Payne* v. *Elliott*, 54 Cal. 341; *Budd* v. *Multnomah St. R. Co.*, 12 Oreg. 271.)

In the case at bar distinct certificates had not been issued for any of the two hundred and sixteen shares embraced in the original certificate, nor had any certificate been issued to Mary Mahaney or her successor in interest for the seventy-five shares. The whole number of shares

remained in the name of the defendant upon the books of the corporation. He would, therefore, be entitled, as between the corporation and himself, to the dividends upon the stock, and such dividends would not be paid to his assignee on the seventy-five shares of stock until her right as a stockholder appeared upon the books of the corporation. Before this could be done, after the death of Mrs. Mahaney, and, perhaps, in anticipation that her executor might procure the necessary transfer on the corporation books, the defendant assigned the whole stock embraced in the certificate, including the seventy-five shares, to an officer of the corporation so that it would be difficult, if not impossible, for the executor to procure any transfer of the seventy-five shares upon the books. In making this transfer of the whole stock the defendant wrongfully exercised an active dominion over the seventy-five shares, claimed title to them, and deprived the executor of the substantial benefit and use of those shares.

We are of opinion that, both upon principle and authority, this was such a conversion of the stock as justifies this action and entitles the plaintiff to recover. (Cook Stock & Stockh. [3d ed.] § 576, and cases cited.)

As we have seen, John C. Mahaney, the executor, in his individual name, assigned the seventy-five shares of the stock to the plaintiff. The respondent claims that this assignment conferred no title to the stock upon the plaintiff, as it was not made by Mahaney as executor.

John C. Mahaney was the legal owner of the stock in controversy (though he took it as executor), and he could, by an assignment in his individual name, transfer the stock to the plaintiff. (*Patchen* v. *Wilson,* 4 Hill, 57; *Nichols* v. *Smith,* 7 Hun, 580; *Merritt* v. *Seaman,* 6 N. Y. 168; *Leitch* v. *Wells, supra; Matter of Callister,* 88 Hun, 87; 34 N. Y. Supp. 628, and cases there cited.)

And the assignment of the stock carried with it a transfer of the cause of action for its conversion. (*Birdsall* v. *Davenport,* 43 Hun, 552.)

In the *Leitch* case a husband who held bank stock as an executor appears to have transferred it in his own name to his wife and she transferred the stock to the defendant. It was held that these transfers conveyed a good title in the stock to the defendant.

In the *Callister* case a party had given a check as administratrix, and it was sought to bind the estate she represented by that check. It was held that it was the check of the administratrix individually, and did not bind the estate.

In the case at bar had Mahaney assumed to transfer the stock as executor, it would still have been regarded as his individual act. The controversy here is not between the estate and the executor, but it is between the individual holding the stock and other parties.

The point we have last considered was not raised upon the trial, but as a new trial must be ordered in this case we have deemed it proper to consider this question in connection with the others.

. The plaintiff's exceptions should be sustained and a new trial ordered, with costs to abide event.

All concurred.

Plaintiff's exceptions sustained and a new trial ordered, with costs to abide the event.